```
1                    UNITED STATES DISTRICT COURT

2                  EASTERN DISTRICT OF CALIFORNIA

3    UNITED STATES OF AMERICA,      : Case No. 1:22-cr-00213-ADA-BAM1

4         Plaintiff,                :      Fresno, California
                                           Friday, September 2, 2022
5              v.                   :      12:58 p.m.

6    CHARLES BARRETT,               :      DETENTION HEARING

7         Defendant.                :

8    : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

9
                         TRANSCRIPT OF PROCEEDINGS
10           BEFORE THE HONORABLE BARBARA A. McAULIFFE,
                   UNITED STATES MAGISTRATE JUDGE
11

12   APPEARANCES (via Zoom):

13   For the United States of      United States Attorney's Office
     America:                      BY:  JESSICA A. MASSEY, AUSA
14                                       MICHAEL G. TIERNEY, AUSA
                                    2500 Tulare Street, Suite 4401
15                                  Fresno, CA  93721

16   For the Defendant:            Office of Federal Public Defender
                                    BY:  REED B. GRANTHAM, AFPD
17                                  2300 Tulare Street, Suite 330
                                    Fresno, CA  93721-2228
18

19   Court Recorder:               O. ROSALES

20
     Transcript prepared by:       JANICE RUSSELL TRANSCRIPTS
21                                  1418 Red Fox Circle
                                    Severance, CO  80550
22                                  (757) 422-9089
                                    trussell31tdsmail.com
23

24   Proceedings recorded by electronic sound recording; transcript
     produced by transcription service.
25
```

1        FRESNO, CALIFORNIA, FRIDAY, SEPTEMBER 2, 2022, 12:58 P.M.

2          (Call to Order of the Court)

3            THE COURT:  All right.  Good afternoon.  We're here on

4    a detention hearing.  It was continued over from the

5    arraignment.  I have received and reviewed the Pretrial

6    Services report and it's the Government's burden.

7            Who is arguing on behalf of the Government?

8            MS. MASSEY:  Good afternoon, your Honor.  Jessica

9    Massey and Michael Tierney for the United States, but I will be

10   making the argument.

11           THE COURT:  Okay.

12           I've reviewed the Pretrial Services report.  The

13   Pretrial Services report indicates a recommendation for

14   detention based on danger and I don't recall what the moving

15   basis was by the Government, but are you -- what -- what are

16   the bases?  And then you can begin your argument.

17           MS. MASSEY:  Your Honor, the Government is moving for

18   detention on the bases of flight and danger here.  I'll start

19   with danger first.

20           The defendant is a professional rock climber and sort

21   of, almost by definition, is a transient individual.  He's

22   constantly traveling back and forth across the United States in

23   order to climb in different regions depending on the time of

24   year.  At the time of his arrest on Monday it appeared very

25   clear to the agents that placed him under arrest that he was

1    living out of his vehicle.  They found a number of personal

2    items, clothing and bedding, inside of that vehicle and

3    Mr. Barrett, I believe, also made similar statements to

4    Pretrial Services when he was interviewed that he is currently

5    living inside of that vehicle.  Additionally, he told Pretrial

6    Services that he has a residence located in Kentucky and we

7    know for a fact that that is one of the locations where the

8    defendant climbs and other individuals have confirmed that they

9    have seen him in that area.

10            Additionally, your Honor, he does have prior

11   violations from the last time that he was on pre-trial

12   supervision in the federal court here.  At that time he is

13   reported to have essentially violated every condition that he

14   was placed on.  He did not report to Pretrial Services.  He did

15   not report as required for his substance abuse testing.  He did

16   not report to do his substance abuse or his substance testing

17   itself.  So not just the treatment, but also the testing.

18            So those, I think, collectively, your Honor, sort of

19   contribute to the bases for why we believe he is a flight.

20   'Cause if he's allowed to leave custody today I think it'll be

21   extremely difficult for us to locate him and I'm virtually

22   certain that he would just simply refuse to appear for his

23   future court dates.

24            THE COURT:  Well --

25            MS. MASSEY:  With regard to --

1          THE COURT:  -- we're, we're going to have a third-

2     party custodian if I were to release him.  There is one

3     proposed.  Pretrial Services deems him suitable.  There is a

4     residence.  Why isn't that mitigate against flight?

5          MS. MASSEY:  Your Honor, quite frankly, the defendant

6     is not the type of individual to follow instructions.  He made

7     it clear from the last time that he was on pre-trial release

8     that he just simply does not abide by the court's orders.

9          Additionally, you know, the Government has information

10    with regard to state cases that the defendant had, including

11    restraining order, hearings, and the like.  So he has been

12    served with restraining orders for one or, perhaps, two other

13    victims and despite those court orders, the defendant continues

14    to either contact those individuals directly or request that

15    other people contact those individuals, which is also a

16    violation of the court order for him not to have contact with

17    them.

18          So the defendant's made it very clear in various

19    circumstances that he's simply not willing to listen when a

20    court tells him to do or not do something.  So I understand

21    that there is a third-party custodian that Pretrial has deemed

22    to be suitable, but the Government is not convinced that just

23    because this person is willing to do so, that the defendant is

24    actually going to abide by the rules.

25          THE COURT:  Okay.  And you were going to argue danger.

1          MS. MASSEY:  Yes, your Honor.

2          With regard to danger, the defendant is currently

3   charged with a violent sexual assault of an individual on three

4   separate occasions in August of 2016.  Those assaults included

5   violent rapes, both vaginally and anally, of this victim.  He

6   has other victims that the Government is aware of, but at, as

7   of this point in time, you know, due to jurisdictional issues

8   the Government has not been able to charge those cases here.

9   But those victims have also been subject to similar conduct by

10  this defendant with regard to sexual assaults.

11         He has a prior incident where he violently attacked a

12  girlfriend of his at the time by punching her repeatedly in the

13  face and in the head resulting in various injuries, including

14  bleeding from her ear.  As indicated, he does violate

15  restraining orders that have been taken out against him by

16  other individuals, calling and texting victims, having third

17  parties reach out to them, placing veiled threats on social

18  media with regard to these individuals.  Just this week, in

19  fact, he was in court on Monday for a hearing with regard to a

20  restraining order by one of these other known victims and the

21  defendant admitted in open court that he had, in fact, asked

22  someone the night before to help him violate the restraining

23  order by reaching out to the victim.  So that was on Sunday of

24  this week.

25         THE COURT:  Wait.

1          MS. MASSEY:  He has also made --

2          THE COURT:  Wait.

3          MS. MASSEY:  -- threats --

4          THE COURT:  Tell me some -- tell me a little more

5  about that.

6          MS. MASSEY:  About the hearing from earlier this week,

7  your Honor?

8          THE COURT:  Yeah.  Where you just said that in court

9  he, he admitted that he had asked someone to help him contact

10  the victim.

11          MS. MASSEY:  Yes, your Honor.

12          So on Monday of this week, which was the day that the

13  Government arrested the defendant on these charges, he was

14  actually appearing in state court with regard to a restraining

15  order by one of the other victims that I mentioned earlier and

16  during the course of that hearing it came to light that the

17  defendant had requested a third party to reach out to the

18  victim, to the woman who has the restraining order, and the

19  judge specifically asked Mr. Barrett whether or not he had done

20  that and Mr. Barrett admitted that he had.  And I know that

21  because law enforcement was present inside the courtroom when

22  that happened.

23          THE COURT:  Okay.  Thank you.

24          You may continue.

25          MS. MASSEY:  Additionally, your Honor, the defendant

1    does have a history of making threats to harm individuals that

2    he believes have harmed him in some way or another.  So for

3    example, the defendant had a DUI arrest some years ago.  The

4    defendant subsequently made threats to kill the daughters of

5    the ranger that had placed him under arrest for that DUI.  He

6    also slashed the tires of that ranger in retaliation for having

7    been arrested for that case.  He's also made threats for --

8           THE COURT:  How, how do you know that?

9           MS. MASSEY:  That he slashed the tires, your Honor?

10          THE COURT:  Yes, sir -- yes, ma'am.  How do you know

11   he slashed the tires?

12          MS. MASSEY:  Well, I believe he was actually -- I

13   believe -- Mr. Tierney can correct me -- I believe he was

14   actually charged with that.  I don't recall exactly.

15          THE COURT:  Let me --

16          MR. TIERNEY:  Your Honor, that's the basis for the

17   conviction listed in the Pretrial Services report, his federal

18   conviction.

19          THE COURT:  Okay.  Thank you.

20          MS. MASSEY:  Thank you, Mr. Tierney.

21          Additionally, your Honor, on two separate occasions,

22   one in 2016 and one earlier this year in 2022, the defendant

23   has made threats to kill himself and/or victims that are part

24   of the Government's investigation.  In 2016, he made such

25   threats and also indicated that he had firearms and he

1   essentially holed himself up in the woods and the rangers were,

2   you know, attempting to locate him and ultimately did and he

3   was, I believe, hospitalized for mental health issues at that

4   point in time.

5         And then earlier this year, I believe in January of

6   2022, he walked into a mental health facility and indicated

7   that he wanted to harm himself and that he wanted --

8   essentially, if they did not help him, that he would intend to

9   go and kill one of the victims involved in the Government's

10  investigation.

11        THE COURT:  Ms. Massey, let me, let me just interrupt

12  you for a second.  I'm -- my internet is unstable.  I'm going

13  to go off video, okay?

14        MS. MASSEY:  Your Honor, I think, you know, those are

15  sort of the highlights that the Government would put forth with

16  regard to, with regard to danger.

17        So unless the Court has questions, additional

18  questions about any of the circumstances that I've described, I

19  don't think I have anything additional at this point.

20        THE COURT:  You know, I did review Pretrial Services'

21  report, obviously, and there were some indications of, he had a

22  felony condition for corporal injury and a misdemeanor

23  conviction for trespassing and that's subject of the

24  retraining, restraining order you were talking about?

25        MS. MASSEY:  So those, I believe, are two different

1   situations, your Honor.  I think the trespassing conviction had

2   to do with the woman who had the restraining order for which

3   Mr. Barrett was in court earlier this week.

4        And the corporal injury conviction, it was related to

5   the violent assault on the girlfriend some years ago when he

6   was punching her about the head and face.

7        THE COURT:  Okay.

8        MS. MASSEY:  So two different, two different victims.

9        THE COURT:  Okay.  All right.  Thank you.

10       Mr. Grantham.  You're muted, Mr. Grantham.

11       MR. GRANTHAM:  I haven't done that in a while, your

12   Honor.  Apologies.

13       Certainly want to address the issues related to danger

14   that were discussed by the Government, but just to reiterate --

15   and what I am sure your Honor has already read in the report --

16   there is a residence available in Santa Rosa.  The third-party

17   custodian has been vetted by Pretrial Services and is on this

18   call.  I've spoken to this individual at length.  He's a very

19   longtime friend, very close friend of Mr. Barrett's.  He has

20   been very willing to help and assist in any ways, including

21   having Mr. Barrett live there.

22       And the Government briefly discussed issues of flight.

23   I know that wasn't the basis for the Pretrial recommendation

24   for detention.  I don't think flight is an issue.  Yes, he is a

25   professional rock climber and has traveled extensively across

1    the country for rock climbing reasons, but certainly, there's

2    no indication he would not appear in court or not reside at the

3    residence that he would be ordered to reside at.

4         And just as evidence of that, my understanding is that

5    Mono County, the recent case that was discussed by the

6    Government for which he had court on Monday, that's been going

7    on since January.  He's made court appearances.  He's called in

8    as required.  He's been on pre-trial release in that matter as

9    well.  Obviously, it's different on the federal side where you

10   would be requiring a residence and the, certainly the residence

11   with Mr. Newton appears more than suitable.  And obviously,

12   Mr. Barrett recognizes the seriousness of this allegation and

13   this charge in this case never having faced a federal felony

14   case before.  I, I do think that the issue of flight is, is

15   mitigated.

16        In addition, as noted by Mr. Newton, location

17   monitoring is certainly a possibility if the Court were to go

18   for that or be interested in applying something like that.

19        THE COURT:  Well, frankly, Mr. Grantham, the, the risk

20   of nonappearance, I think, could be mitigated.  I, I agree --

21        MR. GRANTHAM:  Okay.

22        THE COURT:  -- with Pretrial Services.

23        So if you could address the issue of danger.

24        MR. GRANTHAM:  Yes, your Honor.

25        And just a couple of points related to that.  And I

1   guess just the first point I'll note is, I'm, I'm sure as your

2   Honor saw, the indictment raises an allegation from 2016.  So

3   six years ago.  My understanding is that the Government has

4   been investigating this case over that period of time.  I

5   believe on at least one occasion they have interviewed

6   Mr. Barrett at length.  So I don't think there's any reason

7   he's been particularly uncooperative during that period of time

8   and the six-year delay between the allegation and today's date

9   suggests that danger really may not be the issue here.  Had it

10  been that this allegation was as serious as it is set forth --

11  and certainly by all appearances is very serious -- I would

12  just note that there has been a significant period of time

13  where there hasn't, there hasn't been any effort to, to detain

14  or prosecute this case.

15          I also just note -- and I think it's relevant --

16  related to that case that he appeared on on Monday in Mono

17  County, I've spoken with the attorney that he had in that case.

18  I've spoken with Mr. Barrett.  I've even obtained documents

19  from that case.  On Monday, the resolution was that it would be

20  deferred entry of judgment to a misdemeanor.  And it's my

21  understanding that the alleged victim in that case had

22  participated in that hearing, had objected to that resolution,

23  yet it was the district attorney and the judge who approved of

24  that deferred entry of judgment resolution.

25          The psychiatric -- the reference to Mr. Barrett going

1   to a hospital in early 2022 is what formed the basis of that

2   case.  It was initially charged as a felony case, felony

3   threatening with intent to terrorize case.

4          Should I proceed, your Honor?  Okay.

5          But --

6          THE COURT:  Yes.  Just a minute.  I'm having some

7   cellular problems here.  So I'm joining multiple ways.  So I'm,

8   I'm following you here.

9          So go ahead.

10          MR. GRANTHAM:  Okay.

11          And so my understanding, again, was that that, that

12   matter was resolved on Monday.  He had been making court

13   appearances.  And, and yes, he had been living in his car at

14   the time.  He had mainly been living in Kentucky recently, but

15   was specifically in California so that he could deal with that

16   particular case.

17          And the,  you know, him going to the hospital either

18   in 2022 or 2016, you know, these allegations have taken a toll

19   on him.  It's affected his mental health.  That has contributed

20   to those efforts on his part to seek help for his mental health

21   conditions.  And I, and I think that actually goes to the fact

22   that there can be conditions that could be applied here related

23   not just to flight, but to danger.

24          Now the Government's, the Government has referenced

25   violations of restraining orders.  Yeah, typically, that's

1    something we would see on a Pretrial report.  I don't see lists

2    here of violations of the restraining order.  The allegation

3    that he supposedly violated the most recent restraining order,

4    whatever the case was, the judge didn't find it nor did the DA

5    find it sufficient that --

6                    THE COURT:  Well --

7                    MR. GRANTHAM:  -- they wanted to proceed with that

8    prosecution.

9                    THE COURT:  Let, let me ask a question here because

10   what I'm, what I'm really hearing from the Government is the

11   concern of, of ongoing intimidation of witnesses.  There's a

12   history apparently -- I think that's what I'm hearing --

13   there's a history of, of violating and contacting potential

14   victims and I don't know if there's contact in this case with,

15   of the victim, but that's what I'm hearing and there's a

16   concern that the Government, that that's going to continue

17   here.

18                   MR. GRANTHAM:  Yes, your Honor, and I guess first

19   that's what I was somewhat noting, is I don't see a record --

20   now they're, they're alleging that -- I just don't see it

21   listed.  Typically, that is listed as a violation.  I think if

22   there were violations of restraining orders or a protective

23   order, that would be listed within the criminal history,

24   obviously.  And I've, I've only known Mr. Barrett this, this

25   week.  So I don't, I didn't represent him in all these prior

1   cases so I can't say one way or the other, but there's

2   certainly no record of it here that he has been violating those

3   restraining orders.  The January case out of Mono County

4   involved a -- part of the deferred entry of judgment was that

5   he not contact the alleged victim in that case.  He was then

6   arrested that day as he was leaving the courthouse.  I would

7   imagine that there would have been a no contact order prior to

8   that as well.  The Government's saying that the judge confirmed

9   it in court on Monday.  I just don't know one way or the other

10  other than it didn't seem to impact the judge's decision to,

11  nonetheless, impose an offer and go forward with a deferred

12  entry of judgment to a misdemeanor, which I think is some

13  indication, either on the judge's part or the district

14  attorney's part, about the, the severity of that case and the

15  likelihood of success on that case.  I think it says something

16  about that.

17       And I think in this case we're dealing with

18  allegations that are, again, six years old.  Mr. Barrett has

19  denied them.  And again, I think he's given statements to the

20  Government, I think it may be approximately a year ago -- the

21  Government would know more -- but I think he's spoken with them

22  about this case.

23       I think a condition, if there was a concern about

24  danger, certainly a condition of no contact, but any condition

25  of home incarceration, home detention where he's not going to

1    be able to go very far at all in that residence in that

2    location that he'd be at, accompanied by -- I don't know

3    necessarily -- I don't necessarily think it's necessary here,

4    but we do have two bond options, both from Mr. Barrett himself

5    and his father.

6           So that's Mr. Barrett, his father, and Mr. Newton who

7    are all willing to put skin in the game in terms of ensuring

8    that there is not going to be a violation of any of the terms

9    of pre-trial release either related to flight or danger.

10          And to the extent that the Government has concerns

11   about his mental health, certainly he can participate in

12   treatment as required, counseling as required.  The fact that

13   he went to a hospital himself seeking help at least on possibly

14   two different occasions I think is indicative of someone who's

15   willing to accept that kind of help.

16          The last thing I just wanted to note related to the

17   Government was referring to the pre trial violation from the

18   prior federal case.  That was a 2005 case that -- that's the

19   one -- the vandalism case, and even in reading the Pretrial

20   report -- oop.  So again, I would just note that's, it was 17

21   years ago, the time I believe Mr. Barrett was 20, 21 years old,

22   and it's not who he is today.  And even in that case the pre-

23   trial violation, subsequent to the pre-trial violation he was

24   still put back on pre-trial release.

25          So I just wanted to note that.  I mean, it's noted in

1  the, in the report, but there is no allegation that he was

2  subsequently detained thereafter or that there were further

3  violations prior to the resolution of that case.

4       So I, I think, again, the age of that is something.  I

5  think the, the real question I'm sure your Honor's going,

6  dealing with is about how do we ensure the safety of the

7  community and any particular alleged victims in this case and I

8  think it really comes down to the stay-away order, financial

9  security that could be posted in the case, and monitoring which

10 would ensure that they would know where he's at if that's an

11 issue.

12       I apologize, your Honor.  Did your Honor say

13 something?  I didn't hear.

14       THE COURT:  I did.  My -- I'm sorry.  My internet is,

15 is poor here.

16       Ms. Massey, why is it a stay-away order would not be

17 sufficient?

18       MS. MASSEY:  Can you hear me?

19       THE COURTROOM DEPUTY:  Judge --

20       THE COURT:  Okay.  Why, why is it that a stay-away

21 order would not be sufficient?

22       MS. MASSEY:  Your Honor, the, the defendant has shown

23 repeatedly that he doesn't abide by those types of orders as

24 recently as this week.  So I, I can't imagine that things have

25 changed so significantly in the five days that the defendant

1  has been in custody that all of a sudden he's going to abide by

2  a court order that tells him not to contact anyone.  He has

3  repeatedly contacted victims despite prior court orders.  He's

4  still doing it.  He doesn't seem to think that there's any

5  problem with him doing it.  He admitted it in open court on

6  Monday that he was doing it.

7          So I, I can't imagine why it would be any different if

8  your Honor tells him not to contact someone versus any of the

9  other judges that have told him that in the past.

10          Your Honor, I did want to clarify.  I'm in touch with

11  the agent who's on the, the public line listening and she

12  clarified for me.  When your Honor had requested information

13  about the trespassing earlier, it was my understanding that it

14  was a second victim but, in fact, it was a third victim who is

15  the individual involved in the trespassing case.

16          So there are three victims that the Government has

17  been investigating the assault of.  As I indicated earlier, due

18  to some restrictions we were only able to charge one of those.

19  And so the trespassing case actually related to the third of

20  these victims, not the second one.

21          THE COURT:  Mr. Grantham?

22          MR. GRANTHAM:  Oh, sorry, your Honor.  I thought I saw

23  -- I didn't, I didn't hear it until just now.

24          I'm sorry.  Was there a particular question or did you

25  want me to respond to that?

1          THE COURT:  Yes.

2          MR. GRANTHAM:  Okay.

3          THE COURT:  Respond to that.

4          MR. GRANTHAM:  Yes, your Honor.

5          Well, I'm just looking at the Pretrial Services

6    report.  It references a trespassing case in Santa Rosa in

7    2017.  So I don't have anything more to add to that and so I

8    don't have any particular information regarding that.

9          I would note, though, that that is, I mean, there was

10   the DEJ from earlier this week, but prior to that that was the

11   last conviction, which was the misdemeanor trespassing in 2017.

12   This is not someone who has what I would -- I mean, obviously,

13   there's -- there's -- there's instances of, of convictions here

14   and there, but we're not dealing with the same severity that we

15   would typically see.  The bond package that's been proposed,

16   the conditions that can be proposed I think are more than

17   sufficient.

18         Obviously, he's entitled to the presumption of

19   innocence still related to this instant charge.  I can't --

20   again, all I can say if the Government has evidence of

21   violation of restraining order, that's one thing.  It's being

22   proffered here.  I just -- I have nothing further on it other

23   than it doesn't appear to be showing on the record that we have

24   before us.

25         Mr. Barrett is -- yes, he's a, a rock climber and yes,

1  he is someone who's traveled quite a bit, but he was, he's

2  pretty well known and accomplished in that community.  He is,

3  he was a sponsored climber.  That's how he's able to even have

4  money that he has saved up.  He is very involved in that

5  community.  It's very important to him.

6       I think the conditions that are proposed here and

7  anything else your Honor would see fit -- he also -- this

8  third-party custodian drove all the way to Mammoth the other

9  day just to obtain the pass, his passport from his car in

10  Mammoth and he is willing, able to post his passport.  He has a

11  valid driver's license.

12       Any of these cases, I, I'm not sure if there's any

13  evidence he's ever been detained in these cases and I don't

14  think there's a history of him failing to appear, at least we

15  don't, I don't see a record of it in the Pretrial Services

16  report.

17       So I think he is someone who's demonstrated an ability

18  to comply with conditions.  There could be very stringent

19  conditions imposed to deal with a particular issue here and I

20  think, I think that's more than sufficient in this case.

21       THE COURT:  Ms. Massey?

22       MS. MASSEY:  Your Honor, I, I understand that,

23  Mr. Grantham's position that these are old allegations, but I

24  would point out that the restraining order victim from this

25  year is the same individual that he threatened to kill in

1   January and this is as a result of an assault that took place

2   12 years ago.

3          So the defendant still clearly harbors resentment

4   towards this victim for coming forward and making these

5   accusations against him.  Despite the fact that the Government

6   wasn't able to charge that case the defendant still seems very

7   much angry with the victim for essentially, quote unquote,

8   ruining his reputation.  And so despite the fact that the

9   assault happened so long ago, the defendant is obviously still

10  fixated on this and other victims as is evidenced by the fact

11  that he's continuing to reach out to third parties to attempt

12  to get in touch with them, sometimes contacting those

13  individuals directly himself, and also putting things on social

14  media to taunt, harass, and intimidate these women.

15         So the fact that there has been a long period of time

16  since these assaults, quite frankly, shouldn't matter because

17  the defendant's conduct recently -- up, up until -- extremely

18  recently, as of last week, shows that he is still willing to,

19  to do these things in order to threaten and intimidate this

20  woman.

21         MR. GRANTHAM:  And, your Honor, if I could just make

22  one additional point and then I'd submit.

23         Just related to, to that, certainly, again, we're

24  dealing with -- the Government is proffering information that

25  he's violating a restraining order.  I've not seen a record of

1   it in the Pretrial Services report.  Certainly if that was

2   happening while these cases were ongoing yet he wasn't violated

3   or wasn't facing any repercussions from it, well, as your Honor

4   knows, that's not going to be possible in this, in this case.

5   If he were released and had a condition and there was any whiff

6   of an allegation of him trying to contact anyone, we all

7   know -- and we've all seen it -- he would be instantly

8   detained, I would imagine.

9           So I, I take the Government at its word, though I just

10  don't see a record of those unlawful contacts, at least not

11  rising to the level of him being violated or him being placed

12  in custody or him facing, you know, charges related to it.

13          And so he understands the severity of this case.  He

14  spent time, a little bit of time in custody, but never had a,

15  had any federal case with a life maximum and, you know, he

16  understands the severity of what's happening here today.

17          THE COURT:  All right, Ms. Massey.  You have the last

18  word since it's your burden.

19          MS. MASSEY:  Your Honor, I, I don't know that I have

20  anything additional to add.  I just reiterate the Government's

21  concern for the safety of these victims as well as the other

22  victims that are out there who, based on information we've

23  received this week as a result of the defendant's arrest, there

24  are other women out there that have been victimized by this

25  individual and the Government would --

1          THE COURT:  What, what did you say about this week?

2          MS. MASSEY:  Can you hear me all right, your Honor?

3          THE COURT:  Yes.  I asked what did you see, say about

4    this week?

5          MS. MASSEY:  Your Honor, it's not just the victims

6    that the Government knows about.  It's, you know, additional

7    victims that are out there that the Government also has

8    concerns about.

9          So the defendant has a violent history.  As of the,

10   the time of the defendant's arrest, a tipline was activated in

11   order for other potential victims to come forward with

12   information and that has already happened and those individuals

13   have indicated that they were fearful of reporting the assaults

14   by the defendant, but now that he was in custody they felt

15   comfortable coming forward.

16         And so it's not simply these three women that we've

17   been talking about today, but certainly, you know, in the

18   Government's position or, you know, it's the Government's

19   contention, basically, that any woman that this defendant has

20   any sort of relationship with is a potential victim.  And so,

21   therefore, the risk of having him out is just so large that the

22   Government, you know, would stand on the information that it's

23   proffered today.

24         With regard to the, the lack of restraining order

25   violations, your Honor, you know, being documented, I, I can't

1  speak to that.  Those are state cases.  Certainly if it had

2  been a federal order of some kind and we had learned

3  information such that we have learned with regard to him

4  violating those orders, you know, we would be in a different

5  situation.  But those are state cases and, and the Government

6  has no involvement in those.

7           THE COURT:  I'm going to try to not lose internet here

8  and I, as you can see, I was on my iPad trying to listen and so

9  I could make sure that I could heard, hear everything and, and

10  the defendant could actually see me observing.  So I logged in.

11           I have now heard the arguments.  I'm back on.  If I

12  lose internet, bear with me.  It'll come back.  I've closed

13  down everything, to the best of my ability, so that I have a

14  stronger internet connection here.

15           So looking at the Pretrial Services report and

16  listening to counsel here, I do believe that, that flight --

17  and really, it's the risk of, of non, of noncompliance with the

18  conditions -- I think that could be mitigated by having a

19  third-party custodian as well as the surety to post something

20  as a way to kind of compel the defendant to comply with the

21  conditions.

22           But I share the Government's concerns here about

23  danger.  And the nature and the circumstances of these offenses

24  here as well as what the Government's proffered as intimidation

25  by the defendant as to other, other victims and some of the

1  other things that have occurred in this in his history cause

2  the, cause me concern.  The Government's represented the number

3  of victims and that he has had others and he admitted he has

4  had others contact the victims to try and sway -- I, I don't

5  know exactly what was said -- but I'm sure it was to sway their

6  reporting or testimony or something of that sort.

7          And he, in fact, has a history of violence and that

8  always causes the Court concern and he has an active criminal

9  protective order in place.  And while he has some psychological

10  issues, that's really not bearing into my, or has had or

11  currently has some psychological issues, that's not really

12  bearing into my decision here.  It's really the history and the

13  course of conduct over the years and for that basis, the Court

14  will detain Mr. Barrett as a danger and have him in custody

15  here.

16          What we need to do now is pick a status conference

17  date.  So what would the parties like to do?

18          MR. GRANTHAM:  Your Honor, if we could set this for

19  the 13th, September 13th.  I believe that's the date by which

20  we would be --

21          THE COURT:  September 14th.

22          MR. GRANTHAM:  The 13th, I believe, is a Tuesday.  I,

23  I'm trying to look at 14 days from the date of the indictment

24  in this case.

25          THE COURT:  Oh, you mean for, at the 2:00 calendar?

1       MR. GRANTHAM:  Yes, your Honor.  Well, I think -- I

2   guess at this time, your Honor, without evidence and without

3   discovery, we're not prepared to exclude time.  So I don't want

4   to set it out beyond the two-week mark by which we would

5   receive discovery.  At that time we can set a further status

6   conference date.  That would be the defense's request.

7       THE COURT:  We can put it -- I'm duty on -- actually,

8   I'm not duty on the 13th, but I can, I can cover this matter on

9   September 13.

10      You're not excluding time?

11      MR. GRANTHAM:  Correct, your Honor.  I just simply --

12  we don't have discovery at this, at this moment.

13      THE COURT:  Okay.

14      Ms. Massey, when do you anticipate?

15      MS. MASSEY:  That's a good question, your Honor.  I

16  haven't been intimately involved in that.  Mr. Tierney has been

17  handling that, but I, I know that it's in the process of being

18  produced.

19      And maybe Mr. Tierney wants to jump in.

20      THE COURT:  Mr. Tierney, when --

21      MR. TIERNEY:  Certainly -- sorry, your Honor.  I

22  didn't mean to interrupt.

23      We'll certainly have it within the 14-day time frame.

24  The agent is placing it on our electronic platform now and then

25  we'll start processing it.

1          So I would anticipate that it'll be sometime maybe

2    middle of next week because there is a fair amount, but it'll

3    definitely be within the 14-day time frame.  Next week would be

4    my estimate.

5          THE COURT:  Wouldn't, wouldn't 14 day -- oh.  Fourteen

6    days from arraignment, okay.

7          MR. TIERNEY:  Correct.

8          THE COURT:  I see what you're saying, not today.

9          We could put it on September 13 at the 2:00 calendar.

10   If discovery's produced and you want to continue it, then you

11   can do that.  If you want to set a trial date, we can do that,

12   too.  September 13 at 2:00.  Currently, Judge Boone is handling

13   that duty calendar for me, but I can come and take care of this

14   matter.

15         So no exclusion of time till September 13 at 2:00 p.m.

16         Any other issues, Ms. Massey?

17         MS. MASSEY:  I don't believe so, your Honor.

18         THE COURT:  Anything else, Ms. Massey?  No.

19         MS. MASSEY:  I, I don't believe so, your Honor.

20         THE COURT:  Okay.

21         Mr., Mr. Grantham?

22         MR. GRANTHAM:  No, your Honor.

23         THE COURT:  Okay.

24         Court's in recess.

25      (Proceedings concluded at 1:33 p.m.)

1                         <u>CERTIFICATE</u>

2          I, court approved transcriber, certify that the

3   foregoing is a correct transcript from the official electronic

4   sound recording of the proceedings in the above-entitled

5   matter.

6   /s/ *Janice Russell*                        September 13, 2022

7   Janice Russell, Transcriber                 Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25